## Case No. 17,399.

WELLS v. JACQUES et al.

[5 Fish. Pat. Cas. 136.] [1]

Circuit Court, D. New Jersey. Oct., 1871.

PATENTS — CONSTRUCTION — COMBINATIONS — PROVISIONAL INJUNCTION—HAT-BODY MACHINES.

1. The machine described in reissued letters patent for an "improvement in machinery for making hat-bodies," granted to complainant

1 [Reported by Samuel S. Fisher, Esq., and here reprinted by permission.]

May 19, 1868, consists of a feeding apron to receive the fur, two endless rollers to carry it to the revolving brush, a picker, a revolving brush to separate and throw the fibers of fur, a perforated cone, with an exhausting cylinder beneath to receive the fur, and an intermediate tunnel or chamber to conduct the fur to the cone; the aperture of the tunnel chamber nearest the cone having a hinged hood at the upper extremity, and a hinged flap at the lower side, to regulate the deposit of fur upon the cone. These devices were separately well known before, but they were so combined by Wells that a concrete machine was contrived, capable, in the formation of hat-bodies, of performing a new and useful result.

2. The machine described in letters patent for an "improvement in machinery for forming hat-bodies," granted to Seth Boyden, January 10, 1860, employs, in common with the Wells machine, various mechanical devices, such as the feed apron, rollers, pickers, and perforated vacuum cone, all well known before, and which Boyden had a right to use; but the patentee claims as new a curved or bent plate-board, in lieu of the Wells chamber or tunnel, with its hood and flap, for directing and guiding the fur from the brush or picker, and properly distributing the same upon the cone.

3. The supreme court held that such a machine was no infringement of the Wells patent, but that the combination of devices by which the result was effected was not identical in the two machines, but dissimilar. Subsequently to that decision, the Wells patent was again reissued, and a recovery was had, under the last reissue, against the defendants, in a suit at law, in the Southern district of New York. The bill, in the present case, alleged that the defendants were using the same machine against which the recovery was had, with trifling alterations in the deflecting apparatus, and prayed for an injunction: *Held*, that, under the circumstances, a provisional injunction must be refused.

In equity. Motion for a provisional injunction.

Suit brought [by Eliza Wells against Henry H. Jacques and others] upon letters patent for "improvements in the machinery for making hat-bodies, and in the process of their manufacture," granted to Henry A. Wells, April 25, 1846. This patent was reissued in two divisions, one dated September 30, 1858, and numbered 396, the other dated October 7, 1858, and numbered 400. Reissue 396, having been extended to Eliza Wells, administratrix of Henry A. Wells, deceased, for seven years from April 25, 1860, was by her assigned to Henry A. Burr, to whom it was reissued December 4, 1860, in two divisions, numbered 1086 and 1087.

The patent having been again extended by act of congress, for seven years from April 25,

1867, the complainant again surrendered reissue No. 1087, and obtained in lieu thereof a reissue, numbered 2942, and dated May 19, 1868.

A suit was brought by Burr, the then owner of the patent, against the defendants, upon reissues 1086 and 1087, which was tried in the circuit court for the district of New Jersey, in September, 1862. See Burr v. Duryee [Case No. 2,190]. The court dismissed the bill upon the ground that the machine used by the defendants was not an infringement of complainant's patent; and this decision was affirmed by the supreme court. See Burr v. Duryee, 1 Wall. [68 U. S.] 531.

The foregoing engraving of the Wells machine will be understood in connection with the claims and the opinion.

The disclaimer and claims of reissues 1086 and 1087 were as follows:

"Having thus described the mode of application of the said invention of the said Henry A. Wells, as the same was successfully reduced to practice by him, I do not wish to be understood as limiting the claim of my invention to such mode of application, as other modes may be devised having the same mode of operation or principle, and only differing from it in form, or in the substitution of equivalent means.

"Nor do I wish to be understood as making claim therein to the combined process of forming and hardening hat-bodies on pervious cones or other analogous 'formers,' preparatory to taking them off in a suitable condition for the after-process of sizing by felting, as this is the subject of another patent.

"What I claim as the invention of the said Henry A. Wells in machinery for forming bats of fur fibers in the manufacture of fur hat-bodies, is the mode of operation, substantially as herein described, of forming bats of fur fibers, of the required varying thickness, from brim to tip; which mode of operation results from the combination of the rotating picking mechanism, or the equivalent thereof, the pervious 'former' and its exhausting mechanism, or the equivalent thereof, and the means for directing the fur-bearing current, or the equivalent thereof, as set forth.

"I also claim the combination of the rotating mechanism, or the equivalent thereof, the pervious former, with its exhausting mechanism, and the lower reflector, substantially as described, to regulate the deposit of the fur fibers on the lower part of the former, as described.

"I also claim the combination of the rotating picking mechanism, or the equivalent thereof, the pervious former with its exhausting mechanism, and the upper deflector, substantially as described, to regulate the deposit of the fur fibers on the tip of the pervious former, as set forth.

"And, finally, I claim the combination of the rotating picking mechanism, the pervious former with its exhausting mechanism, and the means described, or the equivalent thereof, for inducing a current of air to aid in carrying and giving direction to the fur, and insuring its proper deposit on the surface of the pervious former, as required, as set forth."

The claim of reissue 1087 was as follows:

"What I claim as the invention of Henry A. Wells is the process of forming fur hat-bodies by depositing fur fibers to a suitable thickness on the surface of a pervious former of the required shape, and holding them thereon by the pressure of the surrounding air as they are deposited, and then hardening or partially felting the bat so formed, and while it is held by suitable pressure on the surface of the former, to give it the required consistency to admit of removing it therefrom in a suitable condition for the after-process of sizing by felting, as set forth."

The claims of reissue 2942, obtained after the decision in Burr v. Duryea [Case No. 2,190], and upon which the present suit was brought, were as follows:

"1. The combination of the rotating brush or picker, substantially such as described; the rotating pervious cone, provided with an exhausting mechanism, substantially as described, and the bottom plate or guide, substantially as described, for directing the fur fibers toward the lower part of the cone, and preventing the fibers going to waste, the said combination having the mode of operation specified, and for the purpose set forth.

"2. The combination of the feed apron, the rotating brush or picker, substantially as described; the rotating pervious cone, provided with an exhausting mechanism, substantially as described; and the guide or deflector, for directing the fur fibers on to the tip and upper part of the cone, substantially as described, the said combination having the mode of operation specified, and for the purpose set forth.

"3. The combination of the rotating brush or picker, substantially as described; the rotating pervious cone, provided with an exhausting mechanism, substantially as described, and the side guides, or either of them, substantially as described, to prevent fur fibers from getting out of the proper influence of the currents traveling to the cone, and to protect the traveling fibers from disturbing currents, the said combination having the mode of operation specified, and for the purposes set forth.

"4. The combination of the feeding apron, on which the fur can be placed in separate batches, as described; the rotating brush or picker, substantially as described; the rotating pervious cone or former, provided with an exhausting mechanism, substantially as described, the said combination having a mode of operation substantially as described.

"5. The combination of the feed apron, on which the fur fibers can be placed in separate batches, each in quantity sufficient to make one hat-body; the rotating brush or picker, substantially as described; the rotating pervious cone, provided with an exhausting mechanism; and the devices for guiding the fur-

fibers, substantially as described, the combination having the mode of operation specified. and for the purpose set forth.

"6. In combination with the pervious cone, provided with an exhausting mechanism, substantially as described, the covering cloth, wet with hot water, substantially as and for the purpose specified."

The defendants were using machines which they claimed to be constructed under letters patent for "improvement in machinery for forming hat-bodies," invented by Seth Boyden, and issued to him and H. H. Jacques, one of the defendants, January 10, 1860.

The Boyden invention, which is illustrated by the foregoing engraving, consisted in placing directly in front of the picker a plate so bent or curved that its surface would have a certain relative position to the axis of the picker and the surface of the cone, and give such a direction to the fur, as the latter is thrown upon it, by the rapid motion of the picker, that the fur will be drawn and deposited upon the cone by the exhaust or suction within it. The leading differences between the mode of operation of this machine and that of Wells will be understood by reference to the engravings, in connection with the explanations in the opinion of the court.

The claim of the Boyden patent was as follows:

"The fur director or plate, F, curved or bent, substantially as shown and arranged in relation with the cone, B, and picker, D, to operate substantially as and for the purpose set forth."

H. Traphagen and E. N. Dickersen, for complainant.

Courtland Parker, for defendants.

NIXON, District Judge. This case has been heard on motion for a preliminary injunction to restrain the defendants from the use of a machine for forming hat-bodies. alleged to be an infringement of the Wells patent.

The complainant is the widow of Henry A. Wells. to whom letters patent were granted and issued April 25, 1846, for "new and useful improvements in machinery for making hat-bodies." Wells having departed this life before the expiration of the term for which the said letters patent were granted. this complainant, as his widow and administratrix, made application to the commissioner of patents for an extension of the term, pursuant to the acts of congress, and the same was renewed and extended for the further period of seven years. Before the end of this renewal, the complain-

ant applied to the congress of the United States to grant to her, for an extended term, the exclusive right to make, use, and vend the said invention of Wells, for the benefit of his heirs; and an act was passed March 2, 1867, again extending the said patent to the complainant, as administratrix of Wells, for the period of seven years from April 25, 1867.

The complainant afterward surrendered the letters patent, thus extended, to the commissioner of patents, and new letters patent, numbered 2942, were reissued to her, May 19, 1868, for the unexpired period of the term granted to her by said act of congress, by virtue of which reissue she claims the exclusive right of making, using, and vending to others to be used, the said invention and improvement.

The allegations of the complainant's bill are. that she commenced a suit in the circuit court of the United States for the Southern district of New York, upon the said reissued letters patent, against Henry H. Jacques and Henry W. Duryea, two of the defendants in this cause; that, upon issue joined and trial had, the invention of Wells was found by the jury to be new; that a verdict was rendered for complainant. and judgment entered thereon; that the defendants have been using machines at Newark, New Jersey, ever since the granting of said reissued letters patent, and which are the same as those upon which said last-mentioned suit was brought, which machines were, and up to the time of the said trial, continued to be the property of the said Henry W. Duryea, and were by him leased or let to the said defendants, the Newark Patent Hat-Body Company, who were using the same in violation of the rights of said complainant; that said machines were the identical ones for the use of which. for the short period between the reissue of said patent and the commencement of said suit. said recovery was had; and that, since said recovery, trifling alterations in the deflecting apparatus have been made, not affecting the principle and mode of operation of said machine.

These allegations are met by various affidavits produced by the defendants, setting forth the state of the art at the time of the procurement of the Wells patent, and denying that Wells was the first and original inventor of the improvements claimed by him, alleging that the machines used by the defendants for several years past are of the Boyden patent, with some variations, in no wise changing the principle or mode of operation of said patent; that the supreme court of the United States, in the case of Burr v. Duryea, 1 Wall. [68 U. S.] 531, affirmed the decree of this court. holding that the said Boyden patent, for an "improvement in machinery for forming hat-bodies," was not an infringement of the patent granted to Wells for the same thing. and that since then the defendants have kept themselves strictly within the principle of that decision: that the trial in the circuit court of the United States for the Southern district of New York, in January last, between the complainant and two of the

defendants, turned mainly upon the fact that the machine introduced as the one then used by the defendants materially differed from the machine which was shown to have been in use by said defendants, in the case in the supreme court; that the utmost effect which can be given to the verdict of the jury and the judgment of the court in the case of Wells v. Jacques [case unreported], in New York, is that the defendants had no right to change the device or instrumentality of the Boyden patent for guiding and conducting the fur from the picker, and for properly distributing the same upon the perforated cone, from a curved mold-board, specified in the patent, or from the stepped mold-board, as exhibited in the argument of the case of Burr v. Duryea [Case No. 2,190], into a plate with projecting tins or strips of tins, whereby it was alleged the machine was made to perform the same office, and by substantially the same means as the Wells patent; and that, although the said defendants do not regard the judgment in that case as final, because a bill of exception has been prepared, and a motion for a new trial is pending, having ultimate reference to a writ of error, if the motion is denied, yet they at once discontinued the use of the deflecting tins in deference to the said judgment, and have since only employed the precise means of conducting the fur from the picker to the cone, which the court of last resort, in the case of Burr v. Duryea [supra], determined was not an infringement of the Wells patent.

I have carefully examined the huge mass of evidence—much of it the outgrowth of former litigation upon this subject—which the learning and industry of able counsel have placed in my hands, and I do not know that I can better give the reasons for the result to which I have arrived than to state briefly what I understand to be the Wells patent, under which the complainant claims, and the Boyden patent, under which the defendants claim, and then to inquire whether I ought, at this preliminary stage of the case, to undertake to settle by injunction the disputed facts, which, ordinarily, are only settled upon final hearing.

1. What is the Wells patent?

The original patent was issued April 25, 1846, to Henry A. Wells, the husband of the complainant, and through whom she derives her title. It was for a machine for forming, on hollow perforated cones, hat-bodies, and for a process for removing the bodies from the cones after they had been so formed, in such a condition that its fibers could be afterward felted together in a proper degree by hand.

In his original specifications, he alleged that his improvements consisted in feeding the fur, after it had been picked, to a rotating brush between two endless belts of cloth, one above the other, the lower one horizontal and the upper inclined, to gradually compress the fur and gripe it more effectually where it was presented to the action of the rotating brush, which, moving at great velocity, threw it in a chamber or tunnel which was gradually changed in form toward the outlet, where it assumed a shape nearly corresponding to a vertical section passing through the axis of the cone, but narrower, for the purpose of concentrating and directing the fur thrown by the brush into the cone, this casing being provided with an aperture immediately under the brush, through which a current of air entered in consequence of the rotation of the brush, and the exhaustion of the cone, for the purpose of more effectually directing the fibers toward the cone, which was placed just in front of the delivery aperture of the chamber or tunnel, which aperture was provided at the top with a bonnet or hood, hinged thereto, and at the bottom with a hinged flap, to regulate the deposits of the fibers on the cone, with a view to distribute the thickness of the bat whenever more was required to give additional strength.

Besides the machine, he also included a claim for a process for hardening the vat whilst on the perforated cone or former, and preparatory to its removal therefrom, by immersing it in hot water; and for covering the vat with felted or fulled cloth, before it was removed from the cone or former.

His machine, then, as described, consisted of a feeding apron to receive the fur, two endless rollers to carry it to the revolving brush or picker, a revolving brush to separate and throw the fibers of fur, a perforated cone, with an exhausting cylinder beneath, to receive the fur, and an intermediate tunnel or chamber to conduct the fur to the cone; the aperture of this tunnel or chamber nearest the cone having a hinged hood at the upper extremity, and a hinged flap on the lower side, which, acting in combination with the hood, increased the thickness of the vat upon the cone, where, in the formation of a hat-body, more thickness was required. In its construction, he used a combination of mechanical devices—the feeding apron, the endless roller, the revolving brush or picker, the perforated vacuum cone, the intermediate trunk or conductor, all of which were before well known in the arts, and not claimed by him, in themselves, as new; but so combined that a concrete machine was contrived, capable, in the formation of hat-bodies, of producing a new and most useful result.

The defect of former machines was that the deposit of the fur upon the cone could not be properly regulated. To make a good hat-body, the material requires to be distributed in unequal quantities—thicker where the brim joins on to the body to secure strength, and thinner at the top to secure lightness.

It is claimed for the Wells patent that he made such a combination of devices that the particles of fur, after their disintegration, were caused to pass from the brush to the cone in such varying density as to make the vat of varying thickness, according to the desire of the manufacturer, and that this result is produced by a tunnel or chamber, through which the fur is carried, by the currents of air, to the cone, with a flap underneath and a hood above, capable of such adjustment that distribution of

the fur upon the cone, as to thickness or density, is subject to the will and under the control of the operator. Besides the surrender and reissue of this patent, made by the complainant in May, 1868, above referred to, the same was first surrendered by the assignees of Wells, in September, 1856, and reissued to them in two separate patents—one for the machine, and the other for the process. Still another surrender was made in 1860; and, upon what was alleged to be amended specifications, letters patent, numbered 1086 and 1087 respectively, were reissued—the first for the process, and the latter for the machine.

2. What is the Boyden patent?

The letters patent for the Seth Boyden machine were granted January 10, 1860, and were 'for "improvement in machinery for forming hat-bodies." He thus describes his invention:

"This invention relates to an improved mode of directing or guiding the fur to the cone, as hereinafter fully shown and described, and whereby trunks and other comparatively complicated appliances, hitherto used for the purpose, are dispensed with, and an exceedingly simple and efficient device substituted therefor.

"The invention consists in placing directly in front of the picker a plate, so bent or curved that its surface will have a certain relative position with the axis of the picker and the surface of the cone, and give such direction to the fur, as the latter is thrown on it by the rapid motion of the picker, that the fur will be drawn properly on the cone by the exhaust or suction within it."

Then, after more specifically describing his invention by the use of a diagram, he proceeds:

"The peculiar curvature of the plate not only gives the proper direction to the fur, so that the latter may properly cover the cone, but it also directs the fur to the cone in proper quantities; for instance, the central or highest part of the plate is comparatively a short curve, and ''-ects a small quantity of fur to the upper part of the cone, where but a small quantity is required; but it will be seen that the lower part of the plate has a double-curved surface to supply the cone, one at each side of its center, so that the cone will be properly 'fed or supplied, the supply gradually increasing from the top to the bottom of the cone.

"I would remark that, although the surface of the plate has been described as being in planes extending from the apex to the base of the cone, and all bisecting the axis of the picker, still a slight departure is made from this rule, and that is, the plate is slightly elevated at its outer edges or toward the cone, from the positions above stated, in order to compensate for quantity, the latter serving to counteract, in a measure, the power of the exhaust, and that of the picker, and give a downward movement to the fur. By slightly elevating the direction of the fur above its otherwise proper path, due provision is made for such a contingency."

He then disclaims the cone, picker, and feed apron, but claims as new the fur director plate, curved or bent, substantially as shown, and arranged in relation to the cone and picker, to operate substantially as and for the purpose set forth.

This is the description of the patent, as given by the inventor himself. He uses, in common with Wells, various mechanical devices, such as the feed apron, rollers, pickers, and perforated vacuum cone, well known before, and which he had the right to use, but claims as new a curved or bent plate-board, in lieu of a chamber or tunnel, with hood and flap, for directing or guiding the fur from the brush or picker, and properly distributing the same upon the cone.

Whether this machine, thus constructed, is an infringement of the Wells patent, was the precise question before this court in the case of Burr v. Duryea [Case No. 2,190], and it was held to be no infringement. The decree, upon an appeal, and after an able and exhaustive discussion by counsel, was affirmed by the supreme court of the United States. [Burr v. Duryee] 1 Wall. [68 U. S.] 531.

The court held that, although the Boyden machine might produce the same effect that was secured by the Wells patent, to wit, such a regulated deposit of fur upon the cone that a hat-body was the result, yet the combination of devices by which that result was effected was not identical, but dissimilar; and that·the subject matter of the patent being a machine, the inventor had no right to surrender it, and, upon a reissue, claim for a "mode of operation," and thereby hinder other inventors from reaching the same end, or producing the 'same effect, by other substantially different mechanical parts or contrivances.

Adverting again to the bill of the complainant in this case, she substantially charges that the defendants have been using machines ever since the granting of her reissued letters patent, which are the identical ones for the use of which the recovery in the New York suit was had; and that, since said recovery, trifling alterations in the deflecting apparatus have been made, not affecting the principle and mode of operation of said machines.

The charge, then, is an infringement of the Wells patent—a colorable invasion being· attempted by certain changes in the working apparatus of the machine, not affecting the mode of operation.

This charge is specially denied in the affidavits' submitted by defendants. Without dwelling upon the depositions of Hibbard and Eliot, who are offered as experts, to exhibit and illustrate the difference between the machine of the defendants and the Wells patent, and without giving any weight to what they testify as to the want of novelty of the Wells patent, deeming it now too late to attempt to raise any such issue, the testimony of Campbell, the foreman of the corporation defendant, and of Jacques, one of the defendants, prove that the defendants ceased to use the projecting tin plates

immediately after the verdict in the New York case, and have confined themselves to the use of the Boyden patent, with curved or stepped mold-boards, of the nature and character which they exhibited and admitted that they used in the case of Burr v. Duryea [supra.]

The supreme court having decided that such a use of the Boyden machine is not an infringement of the Wells patent; and the complainant, in her bill, having alleged that the defendants have made trifling alterations in the deflecting apparatus of the machine that do not affect its principle or mode of operation,—which is denied by the affidavits of the witnesses of the defendants, a question of fact is raised, which I can not satisfactorily consider and settle at this stage of the proceedings, but can best determine upon final hearing.

I am therefore constrained, under the somewhat peculiar circumstances of this case, as now presented, to refuse the request of the complainant for a provisional injunction, and leave the whole case for a final hearing upon the merits.

The injunction is refused.

[For other cases involving this patent, see note to Burr v. Cowperthwaite [Case No. 2,188.]